**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD TURNER | : | |
| | : | |
| Appellant | : | No. 2432 EDA 2023 |

Appeal from the Judgment of Sentence Entered August 10, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0001255-2022

BEFORE:  LAZARUS, P.J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 14, 2025**

Appellant, Edward Turner, appeals from the August 10, 2023 judgment of sentence imposing 12½ to 25 years of incarceration followed by 5 years of probation for involuntary deviate sexual intercourse with a child (18 Pa.C.S.A. § 3123(b)) and related offenses.  We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1295(a) opinion:

> On November 12, 2021, C.T., who was 15 years old at the time and in his first year of high school, disclosed to his school counselor, Michelle Racca, that C.T.'s father, [Appellant] Edward Turner, had put his penis in C.T.'s mouth when C.T. was nine years old.  C.T. explained to Racca that he and [Appellant] were sitting on the living room couch playing a videogame when [Appellant] asked C.T. to lick his penis.  C.T. further told Racca that [Appellant] ejaculated in his mouth.  After describing what happened, C.T. began sobbing uncontrollably.  When a second school counselor joined C.T. and Racca, C.T. repeated what he told Racca.  Racca also permitted C.T. to speak with his mother

on Racca's cellphone. When C.T. told his mother about his disclosure to Racca, C.T.'s mother told C.T. to 'stop talking.'

Later that day, Racca took C.T. to the Special Victims Unit (SVU) of the Philadelphia Police Department. Detective Kathryn Gordon of the SVU arranged for C.T. to participate in a forensic interview with Colleen Getz of the Philadelphia Children's Alliance (PCA). Getz used a research-based protocol to conduct a forensic interview of C.T. using non-leading questions. During the videotaped interview, C.T. again disclosed that [Appellant] sexually abused him. C.T. also explained that he felt nervous about what his parents would think about his disclosure and about what would happen from there.

Lisa Rotchford of the Department of Human Services (DHS), together with Detective Gordon, observed the forensic interview of C.T. from another room. Rotchford then met with C.T. after the interview. While meeting with C.T., Rotchford observed that C.T. was upset, and he told Rotchford that he was scared and concerned that his parents would hate him. C.T. also disclosed to Rotchford that [Appellant] had physically abused him as a form of discipline by hitting him on different occasions. Rotchford tried to determine if there was a safe place for C.T. to stay, apart from [Appellant]. Rotchford eventually decided that C.T., together with his siblings, could go stay with his maternal grandmother.

As part of the DHS safety plan, neither of C.T.'s parents [were] permitted to have contact with C.T. and his siblings. C.T.'s mother was not permitted to have contact with C.T. because there was reason to believe that C.T. might have disclosed the abuse to his mother in the past. DHS had concerns that contact with C.T.'s mother might affect C.T.'s account of [Appellant's] abuse. It was not until Thanksgiving that C.T.'s mother was permitted to resume contact with C.T. and his siblings. During a subsequent visit with C.T. at his grandmother's home, Rotchford met privately with C.T. C.T. told Rotchford that C.T. felt guilty for separating C.T.'s brothers from [Appellant]. C.T. added that he felt as if people were mad at him.

[On December 3, 2021], C.T. returned to Racca's office at his school to speak with her. C.T. expressed tremendous guilt and told Racca that he wished he had never said anything. He said he loved his parents and siblings, and that his disclosure had caused them difficulties. More than once, C.T. asked, 'Why should all of this be happening to them because of something that I said?'

- 2 -

By the time C.T. testified at trial in February 23, he was 16 years old. At trial, he denied that [Appellant] had ever sexually molested him. C.T. claimed his previous disclosure that [Appellant] put his penis in C.T.'s mouth when he was nine years old was 'just a dream.' At trial, C.T.'s mother also testified that years earlier C.T. had described the incident to her as a dream. When C.T. was asked if he remembered going to PCA and talking with Getz about the incident, C.T. responded, 'I don't remember going anywhere.' At trial, the videotaped interview of C.T. at PCA was played for the jury, and the recording showed that C.T. had not described the incident as a dream during the forensic interview. C.T. also claimed at trial that he could not recall telling Racca about the incident. C.T. later testified that he did recall telling Racca about the incident, but that he told her it was a dream. Racca testified that C.T. had not described the incident to her as a dream.

Trial Court Opinion, 11/15/23, at 2-4 (record citations omitted).

On March 2, 2023, a jury found Appellant guilty of involuntary deviate sexual intercourse with a child. The trial court imposed sentence as set forth above, and Appellant did not file a post-sentence motion. This timely appeal followed.

Appellant's only argument is that the trial court erred in permitting Racca to testify about C.T.'s December 3, 2021 statements to establish C.T.'s state of mind when he made them. Appellant's Brief at 9.[1] Admission of

_____

[1] We observe that Appellant's "Questions Presented" contains several unfortunate errors. His statement of questions involved reads as follows:

    I.    Did the lower court err by permitting? [sic]

    II.   XXX? [sic]

*(Footnote Continued Next Page)*

evidence rests within the sound discretion of the trial court; we will not reverse absent an abuse of discretion. **Commonwealth v. Luster**, 234 A.3d 836, 838 (Pa. Super. 2020). The Pennsylvania Rules of Evidence prohibit hearsay, subject to certain exceptions. Pa.R.E. 802. An out-of-court statement offered in court to prove the truth of the matter asserted is hearsay. Pa.R.E. 801(c); **Commonwealth v. Collins**, 703 A.2d 418, 424 (Pa. 1997). Rule 803(3) permits hearsay evidence of the declarant's mental, emotional or physical condition:

> (3) **Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Pa.R.E. 803(3). To determine whether a statement is admissible under Rule 803(3), the trial court must determine whether it is relevant and, if relevant, the trial court must analyze the character of the proffered statement.

---

Appellant's Brief at 5. Likewise, the page headed "Summary of Argument" is blank. Appellant's Brief at 8. The Pennsylvania Rules of Appellate Procedure require a statement of questions involved and a summary of argument. Pa.R.A.P. 2116, 2118. Lack of compliance can result in waiver. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Because Appellant's errors do not hamper our review of Appellant's lone substantive argument, we will address it on the merits.

- 4 -

***Commonwealth v. Fitzpatrick***, 255 A.3d 452, 479 (Pa. 2021).[2] "So long as the expression refers to the declarant's state of mind (or physical condition), and not to a third-party's state of mind, and so long as the statement refers to the speaker's mindset as it existed at the time the statement was made, facially it is admissible." ***Id.*** Finally, if the evidence is relevant and pertains to the speaker's mindset at the time the statement was made, it still may be excluded if its probative value is outweighed by the danger of unfair prejudice. ***Id.*** (citing Pa.R.E. 403).

As set forth in the trial court's recitation of the facts, C.T. accused Appellant of sexual assault but later told his guidance counselor that he regretted doing so because of the effect it had on his family. The Commonwealth sought to introduce C.T.'s December 3, 2021 statements after C.T. recanted at trial, and Appellant objected to them as hearsay. The trial court admitted them under Rule 803(3).

Analyzing C.T.'s statements under the ***Fitzpatrick*** test, we first examine whether they were relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Appellant was on trial based on C.T.'s allegations of sexual

---

[2] The official comment to Rule 803(3) refers to ***Fitzpatrick*** "[f]or the general inquiry that courts should undertake when contemplating application of this rule." Pa.R.E. 803(3), comment.

assault. Thus, the truthfulness and accuracy of C.T.'s original allegations was of primary importance in the trial. C.T. recanted his allegations at trial and his December 3, 2021 statements provided an explanation for his recantation. In other words, the evidence of C.T.'s state of mind tended to make the facts he asserted in his original accusation more probable. Therefore, the evidence of C.T.'s state of mind was relevant.

Appellant's argument to the contrary is merely conclusionary: "C.T.'s state of mind on December 3, 2021 was entirely irrelevant to the question of whether [Appellant] was guilty of the charged offenses." Appellant's Brief at 10. Appellant's argument ignores the obvious—C.T.'s regretful state of mind for having accused his father provides an explanation for his subsequent recantation. Appellant also criticizes the trial court for reasoning in its opinion that C.T.'s statements of regret took place near in time to the recantation when in fact the recantation did not occur until trial, more than one year later. Appellant's Brief at 10. But Appellant fails to explain why the nearness in time (or lack thereof) of the December 3, 2021 statements to the recantation undermines their explanatory power.

The next step under *Fitzpatrick* is to consider the character of the statements, *i.e.*, do they reflect the declarant's own state of mind at the time they were made. *Fitzpatrick*, 255 A.3d at 479. C.T.'s December 3, 2021 statements plainly meet this test—he expressed his own extemporaneous regret for accusing his father of sexual assault because of the resulting turmoil

for his family.  Pursuant to **Fitzpatrick**, therefore, the statements are facially admissible.  **See also**, **In re Child M.**, 681 A.2d 793, 800 (Pa. Super. 1996) (noting that testimony of a child's statements to other people is admissible to establish the child's state of mind at the time), *appeal denied*, 686 A.2d 1307 (Pa. 1996).

Finally, pursuant to **Firtzpatrick**, we consider whether the statements should have been excluded under Rule 403.  Exclusion of evidence under Pa.R.E. 403 is warranted where the evidence is "so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case."  **Commonwealth v. Talbert**, 129 A.3d 536, 539 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016).  As we have already explained, C.T.'s statements to his guidance counselor were explanatory, not inflammatory.  As the trial court correctly noted, "the statements at issue here presented minimal, if any, risk that the jury might decide the case based on an improper basis or become inflamed to make a decision based on something other than an impartial weighing of the evidence."  Trial Court Opinion, 11/15/23, at 8.  Appellant does not develop any argument to the contrary.

For the foregoing reasons, we discern no abuse of discretion on the part of the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>1/14/2025</u>